UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Index No. 22- cv-7345
OSCAR M. SOLARTE,

                Plaintiff,

                                                             **COMPLAINT**

   - against -

ECONOMIC OPPORTUNITY COUNCIL OF
SUFFOLK, INC., and ROBERT O'DONNELL
Individually,

                                                             **TRIAL BY JURY**

                Defendants.
------------------------------------------------------------------------X

1. Plaintiff, OSCAR M. SOLARTE (hereinafter referred to as "SOLARTE"), by and through his undersigned attorneys, files this Federal Complaint, against Defendants, ECONOMIC OPPORTUNITY COUNCIL OF SUFFOLK, INC., and ROBERT O'DONNELL Individually,  (hereinafter referred to as "Defendants") as follow:

## INTRODUCTION

2. Plaintiff SOLARTE brings this action charging that the Defendants violated his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (ADA);) and the New York State Human Rights Law, Executive Law § 296 et seq. (the "NYSHRL"); ; seeking to recover lost wages, and additional amounts as liquidated damages, emotional distress, punitive damages, reasonable attorney's fees and costs, as a result of being discriminated against on the basis of an actual and/or perceived disability, for being subjected  to a hostile work environment due to his actual and/or perceived disability.

## JURISDICTION AND VENUE

3. Jurisdiction of this action is conferred upon the Court as this action involves a Federal Question under the ADA.  The Court also has jurisdiction pursuant to 42 U.S.C. §12101

<blockquote>et. Seq.; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343. The Court has supplemental jurisdiction over Plaintiff's NYSHR claims pursuant to 28 U.S.C. § 1367 as such claims are derived from a common nucleus of operative facts.</blockquote>

4. Venue is proper in this district based upon Plaintiff's residency within the County of Suffolk, State of New York, within the Eastern District of New York. 28 U.S.C. §1391.

5. This case is governed under the laws of New York State as the Plaintiff worked in Suffolk County, New York tending to Defendants business needs. Plaintiff is also an inhabitant of Suffolk County, New York.

## PROCEDURAL PREREQUISITES

6. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

7. Plaintiff filed his EEOC complaint on April 26, 2022, which is timely.

8. EEOC issued the charge number 520-2022-06055 to this case.

9. Plaintiff requested from EEOC to issue a Right to Sue letter.

10. Plaintiff is still waiting EEOC to issue a right to sue letter.

## PARTIES

11. At all times material, Plaintiff SOLARTE was and continues to be an individual who resides in State of New York, County of Suffolk.

12. Plaintiff is a disabled individual within the meaning of Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (ADA) and the New York State Human Rights Law, Executive Law § 296 et seq. (the "NYSHRL")

13. Plaintiff is a U.S. Veteran.

14. Plaintiff served in Afghanistan as a U.S. Military personnel from April 2011 to July 2014.

15. During his Military Service, Plaintiff has earned **Two Army Commendation Medals, The Good Conduct Medal, The Afghanistan Campaign Medal, and The NATO Medal (International Security Assistance Force)** amongst other distinguished military honors and awards.

16. In or around July 2014 Plaintiff was honorably discharged from U.S. Military and returned to civil life.

17. Plaintiff is suffering from Post-Traumatic Stress Disorder (PTSD) and Major Depressive Disorder due to "Military Service" related incidents.

18. Plaintiff was an employee of the defendant ECONOMIC OPPORTUNITY COUNCIL OF SUFFOLK, INC.

19. Plaintiff was hired by defendants as an SSVF Veteran Housing Counselor.

20. Plaintiff qualified for the position.

21. Plaintiff's salary was $50,000.00 annually.

22. At all times material, Defendant ECONOMIC OPPORTUNITY COUNCIL OF SUFFOLK, INC (Hereinafter referred to as "EOCS") is a corporation duly existing under the laws of the State of New York.)

23. At all times material, Defendant "EOCS" has an office located at 31 W Main St Suite 300, Patchogue, NY 11772.

24. Plaintiff was employed at defendants' office located at 31 W Main St Suite 300, Patchogue, NY 11772.

25. At all times material, Defendant, ROBERT O'DONNELL (hereinafter referred to as "Robert") was and is an individual residing in the State of New York.

26. That at all times relevant hereto, Defendant "Robert" was and is an employee of Defendant EOCS.

27. That at all times, Robert was and still is Assistant to Chief Executive officer at "EOCS"

28. That at all times relevant hereto, Defendant Robert was Plaintiff's manager and/or held supervisory authority over Plaintiff.

29. Defendant "EOCS" had authority to supervise Plaintiff.

30. Defendant "EOCS" had authority to hire/fire Plaintiff

31. Defendant "EOCS" had authority to demote/promote or discipline Plaintiff.

32. Defendant "EOCS" had authority to maintain control Plaintiff's employment records

33. Defendant "EOCS" had authority to determine Plaintiff's pay rate.

34. Defendant "ROBERT" had authority to supervise Plaintiff.

35. Defendant "ROBERT" had authority to hire/fire Plaintiff

36. Defendant "ROBERT" had authority to demote/promote or discipline Plaintiff.

37. Defendant "ROBERT" had authority to maintain control Plaintiff's employment records

38. Defendant "ROBERT" had authority to determine Plaintiff's pay rate.

39. By information and belief, Defendant "EOCS" employs 50 or more employees.

## MATERIAL FACTS

40. On or about October 19, 2020, Plaintiff SOLARTE began working for Defendant "EOCS."

41. During Plaintiff's first week at Economic Opportunity Counsel, Plaintiff was warned by a colleague that he should be careful with a few employees. These employees had a history of talking down to staff and creating a hostile work environment. Plaintiff took this advice and proceeded with caution when interacting with these employees. These employees consisted of a Senior Case Manager in the SSVF department by the name of Zandra Green,

and a Case Manager by the name of Patrenna Cuttino. As Plaintiff's time as an employee went on, Plaintiff started to feel more and more like the advice he had received about these employees was spot on. They would whisper amongst themselves making comments about Plaintiff and another colleague by the name of, Jessica Martin, MSW. Although Plaintiff was finding fulfillment in helping veterans in need, he was struggling because of the hostile work environment he very strongly felt he was in. After discussing his feelings with his wife and with his therapist, Plaintiff decided to stand up for himself and requested a meeting with Robert O'Donnell, Plaintiff's manager. Jessica Martin also sat in on this meeting, which took place on July 27, 2021 (10 months into Plaintiff's employment). During this meeting Plaintiff brought forward a complaint in the form of letter, which he handed to Robert. The letter stated Plaintiff felt he was being harassed by his colleagues and requested the harassment be dealt with diligently as it was affecting Plaintiff's mental health. Plaintiff also provided a statement from his health care provider, Richard Thomeson, to have his employer accommodate his service-connected post-traumatic stress disorder and major depression. The accommodation letter stated as follow: "*Mr. Solarte is being treated at the Department of Veterans Affairs Northport NY; he is treated for his Service-Connected disabilities. I have been made aware of the added stress and increased anxiety due to being mistreated and harassed by other employees who have been undermine his right to work in a dignified workplace. I recommend that he be accommodated to help his symptoms, he has increased anxiety and panic attacks because of the work issues. I recommend that he be placed in a private office along with a trusted coworker and that he be allowed to work remotely a few days a week to decrease his anxiety and remove him from a hostile work environment. He will be reevaluated in one month*."

Robert read the letter and began to slowly laugh. He told Plaintiff that Plaintiff was "doing him dirty" by putting it down in writing. Plaintiff told him how he felt. Plaintiff was being disrespected and was simply asking Robert to step in and help Plaintiff. The doctors note recommended Plaintiff be allowed to work from home or have his own space to not be exposed to the hostile work environment.  Robert told Plaintiff that he did not believe in allowing employees to work remote and that the only other potential solution he could think of would be to put Plaintiff in Amityville, NY office. Plaintiff told Robert he was amendable to moving to Amityville, New York office but he needed to discuss this with his wife first. On or about July 28, 2021, the next day, Plaintiff was called in to the conference room with Human Resources (Anna Maddox) and Robert O Donnell. They terminated Plaintiff indicating that Plaintiff "wasn't a good fit."

42. On or about April 6, 2022, approximately nine (9) months after Plaintiff's termination, Plaintiff received a Facebook message from Jessica Martin.  Jessica Martin wrote to Plaintiff indicating that Robert had asked her to lie if someone ever asked her about Plaintiff's complaint by saying that she (Jessica Martin) never saw Robert read the accommodation letter Plaintiff handed to Robert. Jessica Martin stated that Robert threatened all employees of SSVF to never contact Plaintiff again or they would be fired.

43. Defendants discriminated against, Plaintiff SOLARTE differently and subjected him to a hostile work environment because of his disabilities

44. Defendants terminated Plaintiff due to his disabilities

45. Defendants terminated Plaintiff because Plaintiff requested reasonable accommodation.

46. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

47. As a result of the above Plaintiff has been damaged in an amount which exceeds the jurisdictional limits.

48. As Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, the Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER AMERICANS WITH DISABILITIES ACT ONLY AS AGAINST DEFENDANT EOCS

49. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

50. Plaintiff claims Defendant violated Titles I and V of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

51. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states:

> "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

52. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability and/or his perceived disability.

53. As such Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION UNDER 42 U.S.C. § 12203 FOR RETALIATION

54. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

55. Section 42 U.S.C. § 12203 - Prohibition against retaliation and coercion partially reads as follows: " (a) Retaliation - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

56. Defendant EOCS violated this section by terminating Plaintiff from his position one (1) day after Plaintiff requested reasonable accommodation and complained.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE HUMAN RIGHTS LAW AGAINST ALL DEFENDANTS

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

58. New York State Human Rights Law, Executive Law § 296 (1) provides that:

"It shall be an unlawful discriminatory practice:  (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

59. Defendants EOCS and ROBERT O'DONNELL engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability and/or his perceived disability.

60. As such Plaintiff has been damaged as set forth herein.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

61. Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

62. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

63. Defendant EOCS and ROBERT O'DONNELL violated the section cited herein as set forth by terminating Plaintiff one (1) day after he requested reasonable accommodation and complained.

## JURY DEMAND

Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by the, ADA, and NYSHRL the Defendants, discriminated against, and terminated Plaintiff for his disability and retaliated against him

B. Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed.

C.  Awarding damages to the Plaintiff, retroactive to the date of his discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants unlawful termination of employment and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

D.  Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to reputation;

E.  Awarding Plaintiff punitive damages;

F.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

G.  Awarding Plaintiff liquidated damages;

H.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants unlawful employment practices.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, liquidated damages and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
       December 5, 2022

**SEKENDIZ LAW FIRM P.C.**
**ATTORNEYS AT LAW**

\_\_s/Ismail S. Sekendiz/\_\_
Ismail S. Sekendiz (IS 0509)
45 Broadway Suite: 1420
New York, NY 10006
(212) 380-8087